IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHANNES T. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 6998 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| WENDY'S INTERNATIONAL, INC. | ) | |
| (n/k/a Wendy's International, LLC) and | ) | |
| GUINNESS WORLD RECORDS | ) | |
| LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Johannes T. Martin alleges in his complaint that defendants Wendy's International, Inc. ("Wendy's") and Guinness World Records Limited ("Guinness") violated Section 43(a) of the Lanham Act and his right of publicity under Illinois law by using plaintiff's identity in a 2013 promotion. Defendants have jointly moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted.

## BACKGROUND

According to the allegations of the complaint, plaintiff holds the world record for consecutive kicks of a footbag. A footbag is a popular toy also known by a common brand name, Hacky Sack. In June of 1997, plaintiff set the world record by kicking a footbag into the air 63,326 consecutive times without letting it hit the ground. (Compl. at 1-2.)

Over a six-week period in August and September 2013, Wendy's and Guinness ran a promotion in which every Kid's Meal sold at Wendy's restaurants included one of six Guinness-themed toys. (*Id.* at 3-4, Ex. A.) According to an announcement posted on the Guinness

1

website, which plaintiff printed and attached to his complaint, Guinness "teamed up with Wendy's" "to add a little friendly record-breaking competition to family dining" by offering "record-breaking toys," including a trick footbag ("Once the neighborhood gets a hold of the skills on this footbag, it's only a matter of time before the record of 946 people playing in a circle at once gets taken down.") (*Id.*, Ex. A.) The announcement stated that "each toy provides fun challenges and a chance for parents and kids to outdo each other for the title of family's best. Tallest, smallest, fastest, farthest—each Kid's Meal will allow parents and kids to keep the fun going!" (*Id.*) Further, it stated that each Wendy's Kid's Meal would come with a link to a downloadable eBook, which provided "an exclusive guide to records that families can try to break, so mom or dad or brother or sister can set the family record. It's also packed with many fantastic records that can be broken in just a minute . . . ." (*Id.*)

The words "Guinness World Records" were written on the footbag toys and on their packaging. (*Id.*, Exs. B, D.) Other printed materials related to the promotion, including an in-store display and the bag in which the Kid's Meals were sold, bore the Guinness World Records logo just beneath the heading, "Kids vs. Parents." (*Id.*, Exs. B-D.) The text on both sides of the Kid's Meal bag referred to the promotion's six "record-breaking toys." (*Id.*, Ex. C.) An instructional card included with the trick footbag toy showed a picture of two people playing footbag (plaintiff concedes that he is not pictured) and listed three records below the picture:

1. The most kicks of a footbag in five minutes is 1,019.
2. The most people playing footbag in a circle at one time is 946.
3. The most consecutive footbag kicks in 10 minutes by a pair is 1,415.

(*Id.*, Ex. E.) Directly under the heading, "Instructions," the card read as follows: "How many times in a row can you kick this footbag without it hitting the ground? Back in 1997, Ted

Martin[1] made his world record of 63,326 kicks in a little less than nine hours!" (*Id.*) The card then went on to provide instructions on how to use the footbag. (*Id.*) It concludes with the question, "What kind of family record can you set?" (*Id.*)

Plaintiff claims that defendants violated his rights under the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by printing "Guinness World Records" on each footbag ("Cause of Action #1" (Compl. at 5-6)); using the term "record-breaking toys" in promotional materials ("Cause of Action #2" (*id*. at 6-7)); and referring to plaintiff by name in conjunction with his consecutive footbag kicks world record on the instructions card included with each footbag ("Cause of Action #3" (*id*. at 7-8)).

## ANALYSIS

Defendants move to dismiss the complaint because (1) plaintiff's IRPA claim is time-barred, (2) plaintiff has no standing under the Lanham Act, (3) the term "record-breaking," as used in defendants' promotional materials, is mere puffery, (4) plaintiff has not stated a plausible claim of false endorsement based on defendants' use of his name or any references to his records, and (5) the First Amendment is a complete defense to plaintiff's claims.

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).[2]

---

[1] Plaintiff identified himself as "Johannes T. Martin" in the caption of his complaint, but he signed the complaint as "Ted Martin," and he evidently goes by "Ted." (*See* Ex. G.)
[2] Some courts hold that a plaintiff bringing claims under Section 43(a) of the Lanham Act must also comply with Rule 9(b), which requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud."

3

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570, 556 (2007)). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## I.   IRPA

The Illinois Right of Publicity Act grants to each individual the "right to control and to choose whether and how to use [his or her] identity for commercial purposes," 765 ILCS 1075/10, by prohibiting the "use [of] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent . . . ," 765 ILCS 1075/30. "Commercial purpose" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5; *see Trannel v. Prairie Ridge Media,*

---

Fed. R. Civ. P. 9(b). It is clear that plaintiff makes his allegations with "particularity"; he cites specific statements embodied in the exhibits to his complaint.

4

*Inc.*, 987 N.E.2d 923, 929-30 (Ill. App. Ct. 2013) (defining "public use" as use directed to the "community at large," and "holding out" as "representing").

Defendant argues that any claim plaintiff might have under IRPA is time-barred because a one-year limitations period applies to IRPA claims. The promotion that is the subject of this case occurred in August and September 2013, and plaintiff concedes that he learned about the promotion no later than September 19, 2013, when he first called Wendy's to complain. (Pl.'s Resp. Br., ECF No. 21, at 6.)[3] But plaintiff did not file his complaint in this case until August 2015, almost a year after the limitations period would have expired in September 2014.

Plaintiff responds that (a) the relevant limitations period is not one year but five years, under 735 ILCS 5/13-205, and (b) the statute of limitations was tolled by defendants' fraudulent concealment of the cause of action.

A. **Limitations Period**

Plaintiff cites *Toney v. L'Oreal USA, Inc.*, No. 02 C 3002, 2002 WL 31455975, at *3 (N.D. Ill. Nov. 1, 2002), *vacated in part on other grounds*, 406 F.3d 905 (7th Cir. 2005), in support of his argument that the five-year statute of limitations provided in 735 ILCS 5/13-205 applies to IRPA claims. The court in *Toney* reasoned that there is no statute of limitations within the text of IRPA, so section 13-205 of the Illinois Code of Civil Procedure, which provides a five-year statute of limitations for "an injury done to property" and for "all civil actions not otherwise provided for," applies to IRPA claims.

Defendants argue, however, that later cases have declined to follow *Toney*. One federal court explained its reasons for departing from *Toney* as follows:

---

[3] Plaintiff's response brief, which he calls an "Answer," is paginated in a confusing manner that inexplicably starts from one again on the sixth page. To avoid confusion, the Court will adopt defendants' convention of referring to the pagination of the document as scanned into the Court's CM/ECF system.

> *Toney* did [conclude that there is a five-year statute of limitations applicable to IRPA claims], but *Toney* is an outlier, never cited for that proposition, and was vacated on appeal [on other grounds]. *See Toney v. L'Oreal USA, Inc.,* 406 F.3d 905 (7th Cir. 2005). More recent cases, especially *Blair* [*v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1195-96 (Ill. App. Ct. 2006)], make it absolutely clear that the Right of Publicity Act has a one-year statute of limitations. *See, e.g., Maremont v. Susan Fredman Design Group,* 772 F. Supp. 2d 967, 971 (N.D. Ill. 2011); *Wells v. Talk Radio Network–FM, Inc.,* 2008 WL 4888992, at *2 (N.D. Ill. Aug. 7, 2008); *Blair,* 859 N.E.2d at 1191–92.

*Berry v. Ford Modeling Agency*, No. 09-CV-8076, 2012 WL 5470289, at *3 (N.D. Ill. Nov. 9, 2012) (internal parallel citations omitted). In *Blair*, the Illinois Appellate Court held that IRPA codified and explicitly replaced the common-law appropriation of likeness tort, to which a one-year statute of limitations applied. 859 N.E.2d at 1192 (citing 735 ILCS 5/13-201 and *Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1007 (Ill. App. Ct. 1999) (explaining that the one-year statute of limitations in 735 ILCS 5/13-201 applied to the tort of appropriation of likeness)). Since IRPA "completely supplanted the common-law tort of appropriation of likeness," the Illinois Appellate Court found applicable to IRPA claims the one-year statute of limitations that had applied to the common-law tort. 859 N.E.2d at 1192, 1195-96.

The weight of authority, including the only decision by an Illinois state court to address the issue, holds that a one-year limitations period applies to IRPA claims. This Court agrees.

### B. Fraudulent Concealment

Plaintiff contends that, even if the one-year statute of limitations applies, defendant's fraudulent concealment of plaintiff's claim tolled the statute. According to plaintiff, he contacted Wendy's while the promotion was still running, and he was told to raise his dispute with Guinness. After a number of conversations, Guinness faxed him a letter, dated February 19, 2014, in which it stated that it had "agreed to deal with any dispute arising in relation to the usage of materials that formed part of the promotion" and took the position that "the use of

[plaintiff's] name and record as part of the Wendy's promotion was factual in nature and no person would be led to believe that such usage constituted an endorsement . . . ." (Resp. Br., ECF No. 21, Ex. H.)  Plaintiff engaged counsel and, through counsel, sent a letter to Guinness on March 26, 2014, in which he reiterated his claim that defendants had wrongfully infringed his right of publicity. (*Id.*, Ex. I.)  Plaintiff's counsel then received a letter from Guiness's outside counsel, dated April 29, 2014, in which Guinness described in more detail its position that plaintiff's claim was meritless and requested plaintiff, should he "desire to engage in further discourse concerning [his] claims, [to] kindly direct [his] correspondence to the undersigned" attorney. (*Id.*, Ex. J.)  Having received this correspondence, plaintiff "was through trying to deal with Guinness," but he "still wasn't sure if Wendy's was aware of what Guinness was doing," so he attempted to contact Wendy's again, but he received no reply to several inquiries until July 2, 2015, when Wendy's sent a letter asking him to "direct all further correspondence to Guinness World Records only." (Resp. Br., ECF No. 21, at 6.)

There is no plausible claim of fraudulent concealment in these facts.  Plaintiff raised his dispute with Wendy's, and he was told to contact Guinness because Wendy's and Guinness had agreed that Guinness would handle any disputes arising out of the promotion.  Plaintiff alleges that he exchanged correspondence with Guinness, in which Guinness denied liability.  Mere denial of liability does not toll the statute of limitations. *See Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 9 F.3d 1236, 1241 (7th Cir. 1993); *Tomlinson v. Goldman, Sachs & Co.*, 682 F. Supp. 2d 845, 848-49 (N.D. Ill. 2009).

Plaintiff next alleges that, after Guinness denied liability, he attempted to contact Wendy's again, and Wendy's never responded until after the limitations period had elapsed.  But from the beginning, both parties told plaintiff to direct all inquiries to Guinness, based on an

7

agreement between defendants about how disputes arising out of the promotion would be resolved. Plaintiff was on notice that Guinness, not Wendy's, was the party responsible for resolving his dispute, and there can be nothing inequitable in any failure of Wendy's to respond to plaintiff's inquiries after both defendants had already directed him to raise his complaints with Guinness. Further, even if defendants had neglected to do so, unanswered calls and letters do not amount to fraudulent concealment that might toll the statute of limitations. *McIntosh v. Cueto*, 752 N.E.2d 640, 644-45 (Ill. App. Ct. 2001).

A one-year limitations period applied to plaintiff's IRPA claim, and the limitations period expired in September 2014 at the latest. Plaintiff filed his complaint almost a year later, and no inequitable conduct on the part of defendants excused the late filing. Plaintiff's IRPA claim is time-barred.

## II.  LANHAM ACT SECTION 43(a)

Section 43(a) provides as follows:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Thus, there are two bases for liability: false association or endorsement, under subsection (A); and false representations in advertising, under subsection (B). *Tecnomatic, S.p.A. v. Remy, Inc.*, No. 1:11-CV-00991-SEB, 2012 WL 2376066, at *15 (S.D. Ind.

8

June 22, 2012) (citing *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)).

### A. Lanham Act Standing

The Supreme Court recently explained that a plaintiff has "standing" under section 43(a) of the Lanham Act, or a claim within the scope of the statute's provisions, if he can properly plead and prove "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation." *Lexmark*, 134 S. Ct. at 1390, 1395. To show proximate cause, a Lanham Act plaintiff must show "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and . . . that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.[4]

Defendants contend that plaintiff has no Lanham Act standing because he has no commercial interest that would have been likely to suffer any injury due to defendants' promotion. Plaintiff alleges in the complaint that he is "in the process of getting a footbag mass produced," and defendants' promotion "diluted the market" for his future product. (Compl. at 7.) In his response brief, plaintiff explains further that he has a "verbal agreement with a footbag distribution company for 10% of the gross sales of a mass-produced footbag . . . patterned after the record-breaking footbag that [he] constructed and used to break the footbag world record."

---

[4] The plaintiff in *Lexmark* brought only a false advertising claim under 43(a)(1)(B), but a number of federal courts have applied *Lexmark*'s standing analysis to claims arising under 43(a)(1)(A) as well. *See, e.g., Belmora LLC v. Bayer Consumer Care AG*, No. 15-1335, 2016 WL 1135518, at *8-9 (4th Cir. Mar. 23, 2016) (applying *Lexmark* to both false advertising and false association claims); *Int'l Found. of Employee Ben. Plans, Inc. v. Cottrell*, No. CIV. WDQ-14-1269, 2015 WL 127839, at *3 (D. Md. Jan. 7, 2015) ("[Based on the reasoning of *Lexmark*, t]here is no reason to think the Supreme Court would apply different standing requirements to a false designation claim."); *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 332-33 (M.D. Pa. 2014) (applying *Lexmark* to both false designation of origin and false advertising claims); *see also Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 90-91 (D. Mass. 2014) (assuming, without deciding, that *Lexmark* applies to false association claims as well as false advertising claims); *but see Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1169 (N.D. Cal. 2015) (citing pre-*Lexmark* precedent for the proposition that "different causes of action alleged pursuant to different subsections of 15 U.S.C. § 1125(a) have different standing requirements"). This Court is persuaded by the analysis in *Cottrell* that *Lexmark* does apply to both 43(a)(1)(A) and 43(a)(1)(B) claims.

(Pl.'s Resp. Br., ECF No. 21, at 9.) He has provided the prospective "manufacturer" (it is unclear whether this is the same entity with whom he has an agreement) with a "prototype," to which he will likely have to make "modifications" before he finally "approve[s]" the product. (*Id.*) He describes his injury as one to his "commercial interest in his reputation" because people have "seen an inferior footbag, which the defendants presented as endorsed by" plaintiff, and he seeks to recover for the "loss of endorsement revenue." (*Id.*)

Plaintiff's *pro se* complaint and brief are difficult to understand, but his allegations (assumed to be true, at this stage) are sufficient to demonstrate that he has a commercial interest in his reputation or identity that is of the sort that the Lanham Act protects. *See Parks v. LaFace Records*, 329 F.3d 437, 445 (6th Cir. 2003) (collecting cases). As a footbag world record-holder, he at least arguably has an "economic interest akin to that of a trademark holder in controlling the commercial exploitation of his . . . identity." *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992). To the extent the injury he claims is "loss of endorsement revenue" because defendants used his identity in their promotion without paying him any sort of endorsement fee, that injury is sufficient to provide plaintiff with Lanham Act standing.

But plaintiff also appears to be arguing that, due to defendants' promotion, he suffered some injury to his future business interest in the sale and distribution of a forthcoming footbag product that he is helping to develop and will be paid to endorse. Defendants correctly point out that he has no standing to raise any claim based on any potential injury to that particular future commercial activity because any such injury is purely speculative at this point. *See, e.g., PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1112 (2d Cir. 1997); *Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 87-89 (D. Mass. 2014); *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 391 F. Supp. 2d 1148, 1163 (S.D. Fla. 2005). Plaintiff is not in the footbag business yet. Illustrating

the point, a federal court recently held that a company that had the permits, equipment and facilities necessary for bottled water operations, but had not yet begun operations, did not even have Article III standing, let alone Lanham Act standing, to bring Lanham Act claims against an established bottled water company because the plaintiff company did not allege that it had ever "marketed any bottled water or that it [was] prepared to sell bottled water at [that] time." The defendant bottled water company's "allegedly false advertising or false designation of origin [could not] have harmed" the plaintiff company by diverting any customers because the plaintiff company had not yet begun to "offer bottled water" to anyone. *Maine Springs, LLC v. Nestlé Waters N. Am., Inc.*, No. 2:14-CV-00321-GZS, 2015 WL 1241571, at *6 (D. Me. Mar. 18, 2015).

This case is similar to *Maine Springs*, to the extent plaintiff makes any claims based on an injury to any commercial interest in the allegedly forthcoming footbag product. According to the allegations of his complaint, plaintiff is not in the footbag business at this point, and indeed, his footbag business venture is even less concrete than that of the plaintiff in *Maine Springs*. He has what can only be described as a preliminary "prototype," but he has not settled on a merchantable model of which to launch production, and he has no more than a "verbal agreement" to participate in bringing any product to market at all.

In short, plaintiff has no standing based on his new business venture, but he does have standing based on his commercial interest in his identity as a footbag world record holder.

## B. False Advertising

To state a false advertising claim under the Lanham Act, plaintiffs must allege:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant

caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999); *see* 15 U.S.C. § 1125(a)(1)(B).

Plaintiff alleges that defendants violated the Lanham Act by referring to the footbags they distributed in the promotion as "record-breaking," although neither plaintiff nor anyone else had used those footbags to break any records. Although plaintiff admits that there are many footbag world records, he claims that his is the most prominent, and any use of the term "record-breaking" in connection with a footbag is a reference to him as the "footbag world record-holder." He alleges that he used a footbag of his own making to set the footbag world record, and that referring to the footbag that defendants distributed in the course of their promotion as "record-breaking," although it has nothing in common with the footbag he made and used to set a record, misleads consumers as to the qualities of the footbag.

To survive defendants' motion to dismiss, plaintiff must plausibly allege that the defendants made "a material false statement of fact in a commercial advertisement and that the false statement deceived or had the tendency to deceive a substantial segment of its audience." *Procter & Gamble Co. v. Kimberly-Clark Corp.*, 569 F. Supp. 2d 796, 798-99 (E.D. Wis. 2008) (citing *Muzikowski v. Paramount Pictures Corp.,* 477 F.3d 899, 907 (7th Cir. 2007)).

Defendants contend that plaintiff's false advertising claim does not meet this standard because the alleged false statements are not statements of fact; rather, they are non-actionable puffery. Statements that either refer to a product in such blustery, exaggerated terms that no consumer would rely on them as truthful, such as "lowest" prices or "best" quality, or that make a general claim of superiority so vague as to be incapable of being proved or disproved, are

known as "puffery" and are non-actionable under the Lanham Act. *Procter & Gamble*, 569 F. Supp. 2d at 799 (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 160 (2d Cir. 2007)).

Defendants contend that the term "record-breaking," as used in the promotional materials, is puffery because it is essentially just a way to say "best" or "greatest"—in other words, essentially nothing. *See Procter & Gamble*, 569 F. Supp. 2d at 800 (statements about a diaper's "natural fit" were mere puffery) (citing *Pizza Hut, Inc. v. Papa John's Int'l, Inc.,* 227 F.3d 489, 497 (5th Cir. 2000) (statements that defendant had "better pizza" and "better ingredients" were mere puffery)); *Saltzman v. Pella Corp.*, No. 06 C 4481, 2007 WL 844883, at *4 (N.D. Ill. Mar. 20, 2007) (granting motion to dismiss because defendant's representations that its product was "durable," "maintenance free," and "manufactured to high quality standards" were mere puffery); *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2005 WL 3557947, at *10 (N.D. Ill. Dec. 26, 2005) (granting motion to dismiss because defendant's statement that its "innovative" product "leveled the playing field" was mere puffery).

The Court agrees that the term "record-breaking" contains no factual content that positively misrepresents the nature, characteristics, qualities or origin of the toys, and it is not plausible that any consumer would rely on the term "record-breaking" as a statement about the nature or quality of the footbag. Rather, to the extent it refers to the attributes of the footbag at all, it serves only to make a vague or exaggerated claim of superiority, and it is therefore non-actionable puffery.

There are other reasons why plaintiff's claim cannot survive defendant's motion to dismiss. First, plaintiff does not plausibly allege that any consumer would be misled to believe,

based on the use of the "record-breaking" term, that defendants' footbags had anything to do with plaintiff. There is no reference to plaintiff anywhere in the website announcement, on the in-store display or on the Kid's Meal bag. Plaintiff claims that any reference to breaking records in connection with a footbag is a reference to him, but plaintiff has not stated facts that would permit a reasonable inference that mere use of the term "record-breaking" anywhere near a reference to a footbag is somehow enough to trigger a signifying chain that leads to plaintiff. As the Court explained in the preceding section of this order, plaintiff does not have any Lanham Act standing to challenge any false or misleading statements about the footbags themselves, except to the extent they may implicate his interest in his own reputation or identity as a footbag world record-holder. Without any reference to plaintiff, the "record-breaking toy" statements do not implicate that interest.

To the extent the term "record-breaking" means anything at all in this context (and again, the Court agrees with defendants that the term has no factual content, in the context of the promotion), it seems clear on the face of the promotional materials themselves that the term is related to the "Kids v. Parents" theme of the promotion, which encourages kids and their parents to use the Kid's Meal toys to compete with each other to set family records, or to try to break world records reported by Guinness. The web announcement describing the promotion (Compl., Ex. A) refers not only to "record-breaking" toys but also to adding "a little record-breaking competition to family dining." It states that "each toy provides fun challenges and a chance for parents and kids to outdo each other for the title of family's best." Further, it states that Kid's Meal customers will receive "an exclusive guide to records that families can try to break, so mom or dad or brother or sister can set the family record." (*Id.*) The term "record-breaking toys" is also used on the in-store display related to the promotion (*Id.*, Ex. B) and the promotion-

themed Kid's Meal bag (*Id.*, Exs. C-D); however, both items also use the heading, "Kids v. Parents," apparently in keeping with the theme of bringing "record-breaking competition to family dining." It is not plausible that "record-breaking" in this context refers to plaintiff's record-breaking consecutive kicks performance in 1997 or to any past record-breaking performance by anyone. It refers to what Kid's Meal customers will try to do with their free toys.

It is not plausible that consumers might infer that "record-breaking" somehow refers to plaintiff, and it is not plausible that the promotional materials might mislead consumers as to whether the footbags that defendants distributed as part of the promotion share any "characteristics" or "qualities" with, or are similar in "nature" or "origin" to, 15 U.S.C. § 1125(a)(1)(B), the footbag plaintiff used to break the consecutive kicks record or as to whether plaintiff had any involvement in their production or distribution. Plaintiff does not state a plausible false advertising claim based on defendants' use of the term "record-breaking."

### C.     False Endorsement

To state a claim for false endorsement under the Lanham Act, plaintiff must show that the terms defendants used and the representations they made in the 2013 promotion likely caused consumers to believe that plaintiff endorsed defendants' products. *See* 15 U.S.C. § 1125(a)(1)(A); *Woodard v. Victory Records, Inc.*, No. 11 C 7594, 2016 WL 1270423, at *9 (N.D. Ill. Mar. 31, 2016) (citing *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 522 (7th Cir. 2014)); *see also Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1020 (3d Cir. 2008), *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007-08 (9th Cir. 2001)). The inquiry must focus on confusion by the customer. *See Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 455 (7th Cir. 2011).

Plaintiff claims that defendants violated the Lanham Act by using his identity in materials related to the promotion. Specifically, he claims that putting "Guinness World Records" on a footbag and using his name in the instructional card offered along with the footbag, which states that "Ted Martin made his world record of 63,326 kicks in a little less than nine hours!" and asks, "Can you break the record?" and "What kind of family record can you set?", misleads consumers as to whether plaintiff endorsed the footbag offered by defendants as part of the promotion.

The Court has already explained that using the term "record-breaking" in connection with a footbag does not make any reference to plaintiff, and, similarly, putting the term "Guinness World Records" on a footbag makes no reference to plaintiff. Without any reference to plaintiff, it is not plausible that the term and the footbag together are likely to cause any confusion as to whether plaintiff is somehow associated with defendants or the toys distributed as part of defendants' promotion.

Unlike the other elements of the challenged promotional materials, the instruction card does contain an explicit reference to plaintiff. But the Court agrees with defendants that it is not plausible that any consumer would be likely to be confused about whether plaintiff endorsed the footbag. Importantly, the Lanham Act (unlike state right of publicity laws such as IRPA) does not permit a plaintiff to recover for the mere commercial use of a person's name, image or other identifying characteristic; the statute only prohibits such uses if they suggest endorsement or sponsorship. *See Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214-16 (C.D. Cal. 2000) (citing *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 309 (9th Cir. 1992)). But the card does no more than state the consecutive kicks record and name plaintiff as the record-holder. There is no language directly or indirectly suggesting that plaintiff endorsed defendants'

products, nor do the plaintiff's name and record appear in a context that might, by its nature, plausibly mislead consumers to believe that plaintiff endorsed defendants' products. *Cf. Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 412-13 (9th Cir. 1996) (use of athlete's name in television commercial may have suggested endorsement because "use of celebrity endorsements in television commercials is so well established by commercial custom that a jury might find an implied endorsement"). It is especially true that the instruction card did not suggest that plaintiff endorsed defendants' products because, as defendants explain, plaintiff's name and record were used in materials that consumers saw only *after* they decided to purchase a Wendy's Kids' Meal; the instruction card was not used to promote or advertise footbags or propose any particular transaction related to footbags. At most, it was used to promote Guinness, but plaintiff does not claim to have been harmed by false endorsement of Guinness; he claims to have been harmed by false endorsement of footbags.

Although defendants' use of plaintiff's name was certainly promotional in some sense, this case is more similar to *Cairns*, or other cases in which a person's name or image is used on a product rather than in advertising for a product, than a typical false-endorsement case. In *Cairns*, the defendant sold merchandise bearing the image of Princess Diana. 107 F. Supp. 2d at 1213-14. The court recognized that the essential function of the Lanham Act is to protect consumers from deception as to the source of goods, but merely using Princess Diana's image on an item such as a commemorative plate was no more likely to deceive consumers as to the source of the plate than Andy Warhol's use of a Campbell's soup can or Coca-Cola bottle in his paintings was likely to deceive consumers as to the source of those paintings or as to whether there was any association between Warhol and those companies. *Id.* at 1216. Similarly, it is not plausible that the mere use of plaintiff's name and record in the instructions for a game defendants distributed

17

to Wendy's Kid's Meal customers, as an illustrative example of how to play the game and with the intent that the customers would play that game with their families, was likely to confuse anyone as to whether plaintiff endorsed the toys defendants distributed, whether he was in any sense the source of the toys defendants distributed, or whether he was at all associated with them. His false endorsement claim is not sufficient to survive defendants' motion.[5]

## CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to dismiss [10] without prejudice. Plaintiff has 21 days to file an amended complaint if he can cure the defects identified in this Order and state a claim in compliance with the Federal Rules of Civil Procedure. **SO ORDERED.**　　　　　　　　　　**ENTERED:** May 2, 2016

**HON. JORGE L. ALONSO**
**United States District Judge**

---

[5] Defendants contend that, even if plaintiff otherwise states a claim under the Lanham Act, the First Amendment provides a complete defense to their Lanham Act claim. The Court need not address this contention because, as the foregoing discussion demonstrates, plaintiff has not stated a claim under the Lanham Act.