FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

JUL 05 2016 

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| Johannes T. Martin, | ) | |
| | ) | Case No.:  Case: 15-cv-6998 |
| Plaintiff, | ) | Judge Jorge L. Alonso |
| | ) | Magistrate Judge Susan E. Cox |
| v. | ) | |
| | ) | |
| Wendy's International, Inc., and | ) | |
| Guinness World Records Limited, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**<u>RESPONSE TO MOTION TO DISMISS AMENDED COMPLIANT AND MOTION FOR SUMMARY JUDGEMENT</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................................Page 1

II.  STATUTE OF LIMITATIONS.............................................................................Page 10

III.  FRAUDULENT CONCEALMENT.......................................................................Page 12

IV.  LEGAL STANDARDS.......................................................................................Page 13

V.  THE LANHAM ACT.........................................................................................Page 17

VI.  FALSE ENDORSEMENT..................................................................................Page 18

VII.  FALSE ADVERTISING.....................................................................................Page 28

VIII.  CONCLUSION AND RELIEF REQUESTED.........................................................Page 31

Dear Judge Alonso,

I would like to begin my response to the Defendant's Motion to Dismiss Amended Complaint with a quote from page #117 of the Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit.

"Many appellate lawyers write briefs (and make oral arguments) in a manner that assumes that judges are knowledgeable about every field of law, however specialized. The assumption is incorrect. Counsel should keep in mind that federal judges are generalists. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. CPC Logistics, Inc., 698 F.3d 346, 350 (7th Cir. 2012). Individual judges have specialized knowledge of a few fields of law, depending on the judge's career before he or she became a judge or on special interests developed since, but the appellate practitioner cannot count on the three judges on the panel assigned to his case being intimate with the area of law in the appellate practitioner's case."

This Court is asked to preside over a wide array of cases and there is no way that the Court could be knowledgeable on every field of law especially one as specialized as right of publicity law. I myself, had never heard of the term, "right of publicity" or the Lanham Act until well after the Defendants used my identity, name, and record in their promotion. The IL Right of Publicity Act supplanted common law right of publicity on January 1, 1999. The IL Right of Publicity Act is only four pages long and covers everything this Court needs to know about right of publicity law. The entire text of the IL Right of Publicity Act was included in my Amended Complaint. (Exhibit B) The Defendants are brazenly mischaracterizing and misrepresenting the IL Right of Publicity Act. The IRPA was written in clear and concise language. This Court, or anyone else for that matter, should not have any trouble what-so-ever in ascertaining the lawmaker's intentions. I ask that the Court read the IL Right of Publicity Act in its entirety so that this Court can make an informed and just decision.

1

Right of publicity law maybe relatively obscure but the basic concept of the law is easily understood. The IL Right of Publicity Act and the Lanham Act protect an individual's identity from being exploited for the commercial benefit another person.

Dean Prosser wrote an influential article that delineated four distinct types of the right of privacy:

(1) intrusion upon one's seclusion or solitude,
(2) public discloser of embarrassing private facts,
(3) publicity which places one in a false light, and
(4) appropriation of one's name or likeness for the defendant's advantage.

His first three were lumped together and thought of as the right to be let alone. (The right of privacy) The last and forth type of right of privacy came to be known as the right of publicity. This was in 1960. Under common law, right of publicity has been a separate and distinct law ever since. While right of publicity evolved under common law to incorporate a much broader definition of "identity", the use of one's name or likeness has been prohibited from inception. The Defendants used my name and record in their promotion. The IL Right of Publicity Act specifically includes "name" in the definition of "Identity". Sec. 43(a)(1) of the Lanham specifically includes "name" in the body of the Act. While the public may not be familiar with the Lanham Act or right of publicity law, every advertiser should be. Both laws have been around for over fifty years and specifically prohibit the use of a person's name for commercial purposes.

(765 ILCS 1075/30)

Sec. 30. Limitations regarding use of an individual's identity.

(a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative.

2

To be absolutely clear, the lawmakers defined "Person", "Individual", "Identity", and "Commercial purpose" in Sec. 5. of the IL Right of Publicity Act. (765 ILCS 1075/5) There are only three elements that need to be established to prove liability. The elements are "Identity", "Commercial purpose", and lack of consent. The Defendants do not contest that my identity was used in their promotion. The Defendants do not claim to have my consent to use my identity in their promotion.

However, the Defendants assert on page #4 of the Joint Motion to Dismiss Amended Complaint that, "The instructional booklet inside the sealed bag was not a commercial advertisement for a product."

(765 ILCS 1075/5)

Sec. 5. Definitions. As used in this Act:

"Commercial purpose" means the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising.

The IL Right of Publicity Act defines what "Commercial purpose" means not the Defendants. My identity (name and record) was used in connection with the sale of a Wendy's Kids' Meal. My identity (name and record) was used to advertise and promote Wendy's and Guinness World Records. My name and record were on the card. The Defendants logos were on the card. The Defendants logos were on the sealed bag containing the card and footbag. The Defendants logos were on the Kids' Meal bag and the in-store display. The Footbag World Record is also my identity. The IRPA defines identity as "any attribute of an individual that serves to identify that individual". Guinness World Records was printed on the footbag triggering an association to the Footbag World Record. This footbag was used extensively throughout the entire promotion.

3

The Defendants also claim that the IL Right of Publicity excludes their use of my identity.


(765 ILCS 1075/35)

Sec. 35. Applicability.

- (a) This Act applies to the acts or events that take place after the effective date of this Act.
- (b) This Act does not apply to the following:
  - (1) Use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play, book, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book,, article, or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services;
  - (2) Use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign;
  - (3) Use of an individual's name in truthfully identifying the person as the author of a particular work or program or the performer in a particular performance;
  - (4) Promotional materials, advertisements, or commercial announcements for a use described under paragraph (1), (2), or (3) of this subsection; or
  - (5) Use of photographs, videotapes, and images by a person, firm, or corporation practicing the profession of photography ("professional photographer") to exhibit in or about the professional photographer's place of business or portfolio, specimens of the professional photographer's work, unless the exhibition is continued by the professional photographer after written notice objecting to the exhibition has been given by the individual portrayed.

(Source: P.A. 90-747, eff. 1-1-99.)


The Defendants state on page #4 of the Motion to Dismiss Amended Complaint,

"Second, Defendants use of Martin's identity is excluded from the IRPA's coverage because the act

does not apply to uses that portray the individual in a book or article that "does not constitute in

and of itself a commercial advertisement for a product, merchandise, goods, or services." 765 ILCS

1075/35(a)(1). The instructional booklet inside the sealed bag was not a commercial advertisement

for a product. As stated in the Amended Complaint, the text challenged the recipient of the toy to "try

flicking the footbag from one foot to the other or to your knee." DKT 27 at p. 13. The Defendants use of

Plaintiff's name is also excluded under the following section of the Act, which lists as a non-commercial

4

purpose to which the Act does not apply any "sports broadcast or account." 765 ILCS 1075/35 (a)(2).

The Defendants use is also excluded under the next section, providing that the Act has no application

to use an individual's name in "truthfully identifying the person as the author of a particular work or

program or the performer in a particular performance." 765 ILCS 1075/35(a)(3). Here, Defendants

truthfully and accurately identified Mr. Martin as the performer of a record-setting feat. Accordingly,

the Amended Complaint has not plausibly alleged any claim under the IRPA."


The Defendants claim that the card is a book. The Defendants are wrong. Even if my identity was used

in a book in conjunction with the Defendants logos, it would still be considered an advertisement and

a violation of my rights under the IRPA.


The Defendants claim that the card is a "sports broadcast or account." The Defendants are wrong.

Even if my identity was used in an article or sports broadcast in conjunction with the Defendants logos,

it would still be considered an advertisement and a violation of my rights under the IRPA.


The Defendants claim that identifying, "Mr. Martin as the performer of a record-setting feat" does

not apply to the IRPA. The Defendants are wrong. The Act does not apply to the "use of an individual's

name in truthfully identifying the person as ... the performer in a particular performance;". I did not

perform at any time in the Defendants' promotion.


The Defendants also state on page #4 of the Motion to Dismiss Amended Complaint,

"The Amended Complaint does not state facts that if proven, would establish that Mr. Martin's identity

was used in the "offering for sale or sale" of a product, or advertising or promoting merchandise, or

fundraising. The Amended Complaint admits that the toy footbag was sealed in a bag with a card that

said "Back in 1997, Ted Martin made his world record of 63,326 kicks in a little less than nine hours!"


5

Dkt. 27 at p. 2, 13. It was thus impossible for his identity to have been used in connection with the offering for sale or sale of a product, because the public only had access to his name after the product (a Wendy's Kids' Meal) had been sold."

"Commercial purpose" means the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product..." The product is a Wendy's Kids' Meal. My Identity (name and record) was used in connection with the sale of a Wendy's Kids' Meal. The definition of "Commercial purpose" says "(i) on or in connection with the offering for sale or sale of a product...". Clearly, "offering for sale" means before purchase and "sale" means after purchase. However, my identity (the Footbag World Record) was used throughout the promotion before and after the Wendy's Kids' Meal was sold. The IL Right of Publicity Act prohibits the use of an individual's identity "on or in connection with the offering for sale or sale of a product". The IRPA makes no distinction as to when an individual's identity was used when stating, "the offering for sale or sale of a product."

"Commercial purpose" also means the public use or holding out of an individual's identity "(ii) for purposes of advertising or promoting products, merchandise, goods, or services..." Despite the Defendants' assertions to the contrary, the card itself is an advertisement which promotes the Wendy's and Guinness World Records brands. My identity as the Footbag World Record Holder, including my name, was used to promote the Wendy's and Guinness World Records brands.

On page # 7 of the Motion to Dismiss Amended Complaint, the Defendants state the following, "The Plaintiff's claims must be dismissed because there is no basis for making a distinction between GWR publishing information about a world record in book form versus the small publication at issue in this case. The only use of Plaintiff's name alleged in the Complaint is the mention of his world footbag record in the instruction card inside the sealed child's meal premium package. The Court has already

6

found that this card is not used to promote or advertise footbags, but instead provides an illustrative

example of how to play the game and encourages customers to play the game with their families. Dkt.

26 at 17-18. The instructional card is an expressive work and subject to First Amendment protection."

The Defendants proclaim, "The First Amendment provides a complete defense to all claims." on page #9.


First, there is a distinction between "GWR publishing information about a world record in book form

versus the small publication at issue in this case." The "small publication" is commercial speech and the

Guinness Book of World Records is not. Second, the Defendants state, "The only use of Plaintiff's name

alleged in the Complaint is the mention of his world footbag record in the instruction card inside the

sealed child's meal premium package." The only use! The Defendants can't use my name at all for

commercial purposes without my previous written consent. Third, the card was not used to promote

or advertise footbags. The card was used to promote and advertise for Wendy's and Guinness World

Records. Finally, the card is not an expressive work and is not subject to First Amendment protection.


All of the Defendants' arguments are designed to deceive the Court into concluding that the Defendants'

promotion was not commercial in nature. Common sense dictates that the promotion was commercial

in nature. The IRPA defines what "Commercial purpose" means and the IL Right of Publicity Act is the

law that governs this case. The Defendants used my identity for commercial purposes without my

previous written consent. The Defendants should be held liable for violating my right of publicity.


The Defendant in Jordan v. Jewel Food Stores, Inc. made similar arguments to that of Defendants in

this case. Jewel maintained that its ad congratulating Jordan on his induction into the Hall of Fame was

"noncommercial" speech and thus had full First Amendment protection. The district court held that the

ad was fully protected noncommercial speech and entered judgment for Jewel. Jordan appealed to the

United States Court of Appeals, Seventh Circuit. 743 F .3d 509 (2014) The Appeals Court had this to say,


7

"We reverse. Jewel's ad, reproduced below, prominently features the "Jewel-Osco" logo and marketing slogan, which are creatively and conspicuously linked to Jordan in the text of the ad's congratulatory message. Based on its content and context, the ad is properly classified as a form of image advertising aimed at promoting the Jewel-Osco brand. The ad is commercial speech and thus is subject to the laws Jordan invokes here. The substance of Jordan's case remains untested, however, the district court's First Amendment ruling halted further consideration on the merits. We remand for further proceedings."

Jordan later settled, however, the following commentary by the Court is extremely instructive.

"Jewel's ad certainly qualifies as an advertisement in form. Although the text is congratulatory, the page nonetheless promotes something to potential buyers: Jewel-Osco supermarkets. Jewel's ad is easily distinguishable from the magazine's editorial content. Although the district court properly characterized it as "embrac(ing) the issue's theme," the ad obviously isn't part of the editorial coverage of Jordan's career. It isn't an article, a column, or a news photograph or illustration. It looks like, and is, an advertisement.

We can make quick work of the second and third Bolger factors. As we explained, although no specific product or service is offered, the ad promotes patronage at Jewel-Osco stores more generally. And there is no question that the ad serves an economic purpose: to burnish the Jewel-Osco brand name and enhance consumer goodwill. The record reflects that Jewel received Time's offer of free advertising space enthusiastically; its marketing representatives said it was a "great offer" and it "would be good for us to have our logo in Sports Illustrated because "having your logo in any location where people see it is going to help your company." Indeed, Jewel gave Time valuable consideration—floor space in Jewel-Osco grocery stores—in exchange for the full-page ad in the magazine, suggesting that it expected valuable brand-enhancement benefit from it. We don't doubt that Jewel's tribute was in a certain sense

8

public-spirited. We only recognize the obvious: that Jewel had something to gain by conspicuously joining the chorus of congratulations on the much-anticipated occasion of Jordan's induction into the Basketball Hall of Fame. Jewel's ad is commercial speech.

A contrary holding would have sweeping and troublesome implications for athletes, actors, celebrities, and other trademark holders seeking to protect the use of their identities or marks. Image advertising (also known as "institutional advertising") is commonplace in our society. Rather than expressly peddling particular products, this form of advertising features appealing images and subtle messages alongside the advertiser's brand name or logo with the aim of linking the advertiser to a particular person, value, or idea in order to build goodwill for the brand. See "Image advertising," CAMBRIDGE DICTIONARIES ONLINE, http://dictionary.cambridge.org/us/ dictionary/business-english/image-advertising (last visited Feb. 10, 2014); "Institutional advertising," id., http://dictionary.cambridge.org/us/dictionary/ business-english/institutional advertising (last visited Feb. 10, 2014).

To pick a current example for illustrative purposes, think of the television spots by the corporate sponsors of the Olympics. Many of these ads consist entirely of images of the American athletes coupled with the advertiser's logo or brand name and an expression of support for the U.S. Olympic team; nothing is explicitly offered for sale. Jewel's ad in the commemorative issue belongs in this genre. It portrays Jewel-Osco in a positive light without mentioning a specific product or service—in this case, by invoking a superstar athlete and a celebratory message with particular salience to Jewel's customer base. To say that the ad is noncommercial because it lacks an outright sales pitch is to artificially distinguish between product advertising and image advertising. Classifying this kind of advertising as constitutionally immune noncommercial speech would permit advertisers to misappropriate the identity of athletes and other celebrities with impunity."

The United States Court of Appeals, Seventh Circuit said it much better than I could. However, my

case is more clear-cut than Jordan's. The Defendants used my identity for the purpose of enhancing

the Wendy's and Guinness World Records brands and for the purpose of selling Wendy's Kids' Meals.

The Defendants don't even have a pretext to use my identity. The Defendants' use of my identity was

clearly commercial in nature and consistent with the definition of "Commercial purpose" as defined

by the IL Right of Publicity Act. The Defendants used my identity for commercial purposes without my

previous written consent. The Defendants should be held liable for violating my right of publicity.


## II.    STATUTE OF LIMITATIONS


On page #3 of the Motion to Dismiss Amended Complaint, the Defendant's heading states,

"1. The Amended Complaint Has Not Overcome the Fact That the Plaintiff's Illinois Right of Publicity

Claim is Time-barred". The Defendants also state on the same page, "Because the Court has already

decided that the statute of limitations for this claim expired at least as of September 2014 and Plaintiff

has pleaded no new allegations that would cure the defect, the IRPA claim should be dismissed with

prejudice and without leave to replead."


The Defendants have chutzpah! The United States Court of Appeals, Seventh Circuit let stand the

district court's ruling in Toney v. L'Oreal USA Inc. that the IL Right of Publicity Act has a five year

statute of limitations. The United States Court of Appeals, Seventh Circuit explicitly refused to affirm

the district court's ruling in Berry v. Ford Modeling Agency that the IL Right of Publicity Act has a

one year statute of limitations. However, the Defendants still persist with the same argument used

in Berry and even still cite Berry as an authority. The Defendants state the following on page #3 of

the Defendants' Joint Motion to Dismiss Amended Complaint,

"As the Court held in its Order, there is a one year statute of limitations to file a claim pursuant to the Illinois Right of Publicity Act and, in this case, the statute of limitations expired in September 2014 at the latest. Dkt. 26 at p. 8; see also Blair v. Nevada Landing Partnership, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2d 2006); Berry v. Ford Modeling Agency, Case No. 09cv8076, 2012 WL 5470289 at *3 (N.D. Ill. Nov. 9, 2012) ("more recent cases, especially Blair, make it absolutely clear that the Right of Publicity Act has a one-year statute of limitation") (citations omitted). The Amended Complaint identifies no new facts that would cure the defect. Rather, Plaintiff spends the first eleven pages of the Amended Complaint rearguing his position regarding the statute of limitations that he believes should apply to the IRPA and the scope of the Act. Dkt. 27 at pp. 1-11."

The statute of limitations of the IL Right of Publicity Act is not open to debate or interpretation. The statute of limitations for the IL Right of Publicity Act is five years because the lawmakers who wrote the Act wanted it to be five years. The United States Court of Appeals let stand the district court's ruling in Toney v. L'Oreal USA Inc. that the IL Right of Publicity Act has a five year statute of limitations. That means it's settled! The IL Right of Publicity Act has a five year statute of limitations. The United States Court of Appeals, Seventh Circuit sided with the defendant in Berry v. Ford Modeling Agency Inc., but explicitly refused to affirm the district court's statute of limitations ruling that, "more recent cases, especially Blair, make it absolutely clear that the Right of Publicity Act has a one-year statute of limitations". The IL Right of Publicity Act has a five year statute of limitations according to the IL Right of Publicity Act and the United States Court of Appeals for the Seventh Circuit.

The statute of limitations for the IL Right of Publicity Act is five years. This case is not time barred. However, if this Court rules that statute of limitations for the IL Right of Publicity Act is one year and in the unlikely event that the United States Court of Appeals, Seventh Circuit reverses itself, I reserve the right to claim equitable estoppel.

11

### III. FRAUDULENT CONCEALMENT

Your Honor, I'd like to direct your attention to an article titled, "Fraudulent Concealment in Federal Court: Toward a More Disparate Standard? By Richard L. Marcus. This article can be found if you Google "fraudulent concealment" and click "Fraudulent Concealment in Federal Court- UC Hastings"

This Court need not rule on whether the Defendants engaged in fraudulent concealment if this Court rules correctly that the IL Right of Publicity Act has a five year statute of limitations. However, I would like to use a few quotes from this article to make my case that the Defendants engaged in fraudulent concealment or equitable estoppel. On page #833 of the article, the author (Richard L. Marcus) states,

"Left to themselves to decide an increasing number of fraudulent concealment cases, lower courts rarely analyze the rules governing the application of the doctrine and often state conclusions without explaining them. Given the ad hoc approach of the lower courts, haphazard results have been almost inevitable, causing some district judges to complain that they cannot discern proper standards for the application of the doctrine."

On page #863 of the article, the author states the proper standard that would apply to this case, "Equitable estoppel precludes reliance on limitations by a defendant who has induced the plaintiff to delay suit by misrepresenting the plaintiff's legal rights to him…".

Marsha K. Hoover's letter (Exhibit J)(Answer to Defendants Motion to Dismiss) misrepresented my legal rights. Equitable estoppel precludes reliance on limitations by the Defendant in this case. This case is not time barred even if the statute of limitations for the IL Right of Publicity Act was one year.

12

## IV.    LEGAL STANDARDS

On page #4 and 5 of the Joint Motion to Dismiss, the Defendants stated the following,

B. Standing to Bring a Lanham Act § 1125(a) Claim

"Under the Supreme Court's recently-decided Lexmark case, to assert a cause of action under Lanham Act § 1125(a), "a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." 134 S.Ct. at 1395. To establish proximate causation, a plaintiff need not show that he was in direct commercial completion with the defendant, see id. at 1394, but he must allege that he suffered "economic or reputational injury flowing directly from the deception wrought by the defendants advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." Id at 1391. Proximate cause requires that the "alleged harm ... is (not) 'too remote' from the defendant's unlawful conduct," and the "harm alleged has a sufficiently close connection to the conduct the statute prohibits." Id. at 1390."

This Court accepted the Defendants' representations as true and stated on page #9 of the Court's order,

A.  Lanham Act Standing

"The Supreme Court recently explained that a plaintiff has "standing" under section 43(a) of the Lanham Act, or a claim within the scope of the statutes provisions, if he can properly plead and prove "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation." Lexmark, 134 S. Ct. at 1390, 1395. To show proximate cause, a Lanham Act plaintiff must show "economic or reputational injury flowing directly from the deception wrought by the defendants advertising; and . . . that occurs when deception of consumers causes them

13

to withhold trade from the plaintiff." Id. at 1391.

Defendants contend that plaintiff has no Lanham Act standing because he has no commercial
interest that would have been likely to suffer any injury due to defendants' promotion."

Your Honor, Lexmark makes copiers and wants consumers to buy their ink cartridges. Lexmark made
claims that it was illegal to refill their ink cartridges. Static Control Components, Inc. manufactured
a computer chip that defeated Lexmark's efforts to prevent a competitor from refilling Lexmark's
cartridges. Static Control brought suit over the claims Lexmark made about refilling ink cartridges.
Lexmark claimed Static Control had no legal standing because Lexmark and Static control were not
in direct competition. The United States Supreme Court ruled in favor of Static Control when the Court
said, "and that that occurs when deception of consumers causes them to withhold trade from the
plaintiff." The entire quote from the opinion appears on page # 15 of the order and is as follows,

"We thus hold that a plaintiff suing under § 1125(a) ordinarily must show economic or reputational
injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs
when deception of consumers causes them to withhold trade from the plaintiff. That showing is
generally not made when the deception produces injuries to a fellow commercial actor that in turn
affect the plaintiff. For example, while a competitor who is forced out of business by a defendant's
false advertising generally will be able to sue for its losses, the same is not true of the competitor's
landlord, its electric company, and other commercial parties who suffer merely as a result of the
competitor's "inability to meet (its) financial obligations." Anza, 547 U.S., at 458."

Static Control made the computer chip that allowed the direct competitor to refill Lexmark's ink
cartridges. The Supreme Court found that Static Control suffered economic and reputational injury
flowing directly from the deception wrought by the defendant's advertising.

14

The Defendants misquoted and misrepresented Lexmark by changing, "We thus hold that a plaintiff suing under § 1125(a) ordinarily must show" to "but he must allege that he suffered" and in so doing deceived this Court into believing that I am required to allege and prove that consumers withheld trade from me. This Court's Opinion stated, "To show proximate cause, a Lanham Act plaintiff must show "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and . . . that occurs when deception of consumers causes them to withhold trade from the plaintiff." I am not required to show that consumers withheld trade from me. There is nothing in Lexmark that indicates that I am required to show consumers withheld trade from me. Without realizing that the Defendants were grossly misrepresenting a Supreme Court case, this Court was led to conclude that this Court could not rule contrary to the Supreme Court and denied this plaintiff standing.

The Defendants willfully deceived this Court into ruling against this plaintiff. On page #5 of the Motion to Dismiss, the Defendants also used their misrepresentation to discredit a Seventh Circuit case by stating, "abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377, 1380 (2014) on other grounds." In regards to standing, the Supreme Court in Lexmark had this to say on page #20,

"The District Court emphasized that Lexmark and Static control are not direct competitors. But when a party claims reputational injury from disparagement, competition is not required for proximate cause; and that is true even if the defendants aim was to harm its immediate competitors, and the plaintiff merely suffered collateral damage."

This Court states the following on page #10 of the Memorandum Opinion and Order,
"He describes his injury as one to his "commercial interest in his reputation" because people have "seen an inferior footbag, which the defendants presented as endorsed by" plaintiff and he seeks to recover for the "lose of endorsement revenue."

15

The Court is correct in the above statement. However, I have two separate claims under the Lanham Act. My claim under Sec. 43(a)(1)(A) is for false endorsement. My claim under Sec. 43 (a)(1)(B) is for false advertising. I am bringing suit under Sec. 43(a)(1)(B) as the manufacturer of the footbags that were used to achieve many world records including the Footbag World Record.

The Supreme Court had this to say on page #19 of the Lexmark v. Static Control Components Opinion,

"When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements. Courts have therefore afforded relief under § 1125(a) not only where a defendant denigrates a plaintiff's product by name, see, e.g., McNeilab, Inc. v. American Home Prods. Corp., 848 F.2d 34, 38 (CA2 1988), but also where the defendant damages the product's reputation by, for example, equating it with an inferior product, see, e.g., Camel Hair and Cashmere Inst. Of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6,7-8, 11-12 (CA1 1986); PPX Enterprises, Inc. v. Audiofidelity, Inc., 746 F.2d 120, 122, 125 (CA2 1984)."

Your Honor, I have personally manufactured footbags since 1987. I have a reputation among the sport's most elite players for making the finest footbags. My footbags were used to achieve the Footbag World Record, numerous Doubles World Records, and Andy Linder's Timed World Record. My footbags are highly prized by elite and non-elite players alike. I have sold footbags, given footbags away, and donated footbags to be auctioned for charitable purposes. I have been in the footbag business for decades. When I said I was "in the process of getting a footbag mass produced" I meant that I was "in the process of getting a footbag mass produced" not in the process of producing a footbag for the first time. The Defendants directly equated their inferior footbag with the footbag used to achieve the Footbag world Record. On the card sealed in the bag with their footbag, the Defendants stated,

16

"How many times in a row can you kick this footbag without it hitting the ground? Back in 1997,

Ted Martin made his world record of 63,326 kicks in a little less than nine hours!"


The Defendants directly and undeniably equated the Defendants' inferior footbag (this footbag) with the

one I manufactured and used to achieve the Footbag World Record. According to the Supreme Court's

enunciation in Lexmark, I should be afforded relief under Sec. 43(a)(1)(B) of the Lanham Act.


The above statement also directly and undeniably associated Ted Martin with the Defendants' products.

The card alone provides enough evidence to prove liability under Sec. 43(a)(1)(A) of the Lanham Act. My

persona (the Footbag World Record Holder) was also used extensively throughout the entire promotion.

I entitled to relief under both Sec. 43(a)(1)(A) and Sec. 43(a)(1)(B) of the Lanham Act.


## V. THE LANHAM ACT


(a) Civil Action
 (1) Any person who, on or in connection with any goods or services, or any container for
 goods, uses in commerce any word, term, name, symbol, or device, or any combination
 thereof, or any false designation of origin, false or misleading description of fact, or false
 or misleading representation of fact, which—

 (A) Is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
 connection, or association of such a person with another person, or as to the origin,
 sponsorship, or approval of his or her goods, services, or commercial activities by
 another person, or
 (B) In commercial advertising or promotion, misrepresents the nature, characteristics,
 qualities, or geographic origin of his or her or another person's goods, services, or
 commercial activities,

 shall be liable in a civil action by any person who believes that he or she is or is likely
 to be damaged by such act.

17

## VI.   FALSE ENDORSEMENT

The Defendants used my name and record in connection with their goods. Most Lanham Act cases are not as clear-cut as this case. For example, in White v. Samsung America, Inc. 971 F.2d 1395 (1992), "Wheel of fortune" game show hostess Vanna White was depicted in a print ad as a robot dressed in a wig, gown, and jewelry that resembled White's hair and dress. The robot posed next to a game board that closely resembled the Wheel of Fortune game show set in a stance that imitated Vanna White's signature pose on the game show. The United States Court of Appeals, Ninth Circuit found in favor of White on her common law right of publicity claim and her Lanham Act claim under Sec. 43(a).

The Court used the 8-factor test enunciated in AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979)

(1) Strength of plaintiff's mark; The Court said, "In cases involving confusion over endorsement by a celebrity plaintiff, mark means the celebrity's persona. See Allen, 610 F. Supp. At 627."

(2) Relatedness of the goods; The Court said, "in cases concerning confusion over celebrity endorsement, the plaintiff's "goods" concern the reasons for the source of the plaintiff's fame."

(3) Similarity of the marks; The Court said, "both supports and contradicts a finding of likelihood of confusion. On the one hand, all of the aspects of the robot ad identify White; on the other, the figure is quite clearly a robot, not a human. This ambiguity means that we must look to the other factors for resolution."

(4) Evidence of actual confusion; The Court said, "The forth factor does not favor White because she has presented no evidence of actual confusion."

(5) Marketing channels used; The Court said, "Magazines were used as marketing channels for the robot ad. This factor cuts toward the likelihood of confusion"

(6) Likely degree of purchaser care; The Court said, "consumers are not likely to be particularly careful in determining who endorses VCRs, making confusion as to their endorsement more

18

likely."

(7) Defendant's intent in selecting the mark; The Court said, "Looking at the series of
advertisements as a whole, a jury could reasonably conclude that beneath the surface
humor of the series lay an intent to persuade consumers that celebrity Vanna White,
like celebrity Downey, was endorsing Samsung product."

(8) Likelihood of expansion of the product lines; The Court said, "likelihood of expansion of the
product lines," does not appear apposite to a celebrity endorsement case such as this."

Your Honor, let's apply the Sleekcraft factors to this case.

(1) Strength of mark; My mark is my persona as the Footbag World Record Holder. The Defendant
used my name and record as well as numerous allusions to the Footbag World Record.

(2) Relatedness of goods; The Defendants used my Footbag World Record in conjunction with
the Defendants' footbag and ( Wendy's Kids' Meals, Wendy's, and Guinness World Records).

(3) Similarity of marks; I was positively identified by name and record.

(4) Evidence of actual confusion; I can produce evidence of actual confusion.

(5) Marketing Channels used; The Defendants distributed the advertisement themselves, increasing
the likelihood of confusion as to endorsement.

(6) Likely degree of purchaser care; When a celebrity is positively identified in an advertisement,
confusion as to endorsement is a given unless some evidence to the contrary exists. There is no
contrary evidence. The targeted consumers are children increasing the likelihood of confusion.

(7) Defendants intent in selecting the mark; Looking at the promotion in its entirety, a jury could
reasonably conclude that the Defendants intent was to persuade consumers that the Footbag
World Record Holder was endorsing the Defendants' footbag, Wendy's Kids' Meals, Wendy's,
and Guinness World Records.

(8) Likelihood of expansion of product lines; Not applicable in a celebrity endorsement case.

Sleekcraft is the most widely used test for false endorsement cases under Sec. 43(a)(1)(A) of the

Lanham Act. This case meets all seven applicable factors enunciated in AMF, Inc. v. Sleekcraft Boats.

Like the IL Right of Publicity Act, the Lanham Act does have exclusions. Sec. 43(a)(3) is as follows,

   (3) Exclusions  The following shall not be actionable as dilution by blurring or dilution
       by tarnishment under this subsection:

     (A) Any fair use, including a nominative or descriptive fair use, or facilitation of such
         fair use, of a famous mark by another person other than as a designation of source
         for the person's own goods or services, including use in connection with—

        (i)      advertising or promotion that permits consumers to compare goods or
              services; or

        (ii)     identifying and parodying, criticizing, or commenting upon the famous mark
              owner or the goods or services of the famous mark owner.

     (B) All forms of news reporting and news commentary.

     (C) Any noncommercial use of the mark.

In cases involving confusion over endorsement by a celebrity plaintiff, "mark" means the celebrity's

persona. Sec. 43(a)(3) of the Lanham Act excludes "any fair use... of a famous mark by another person

other than as a designation of source for the person's own goods or services..." Sec. 43(a)(3)(A) allows

for uses that the IL Right of Publicity Act prohibits. In this case, my mark was used as a designation of

source for the Defendants' goods. The Defendants cite Cairns v. Franklin Mint Co. with the intent that

the Court view Cairns as a typical Lanham Act case. Cairns v. Franklin Mint Co. is a nominative fair use

case. The Defendants present Cairns as a typical Lanham Act case. The Defendants are implying that

this case is a nominative fair use case. On page #5 of the Joint Motion to Dismiss, the Defendants state,

20

"Lanham Act claims of false endorsement are narrower in scope than claims brought under state

right of publicity acts. "It is clear that not all uses of a celebrity's image are actionable under § 1125(a).

only uses which suggest sponsorship or approval are prohibited. Unlike the broader right of publicity,

which is infringed by the 'unpermitted use of a person's identity' containing 'no false inference that

plaintiff endorses or approves the product,' § 1125(a) prohibits only false endorsement, not mere use

of an image or name." Cairns v. Franklin Mint Co., 107 F.Supp.2d 1212, 1214 (C.D. Cal. 2000), quoting

and adding emphasis to 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR

COMPETITION, 28:14 (4th ed. 1996)."


On pages 16, 17, and 18 of the Memorandum Opinion and Order this Court stated,


"Unlike the other elements of the challenged promotional materials, the instruction card does contain

an explicit reference to plaintiff. But the Court agrees with defendants that it is not plausible that any

consumer would be likely to be confused about whether plaintiff endorsed the footbag. Importantly,

the Lanham Act (unlike state right of publicity laws such as IRPA) does not permit a plaintiff to recover

for the mere commercial use of a person's name, image or other identifying characteristic; the statute

only prohibits such uses if they suggest endorsement or sponsorship. See Cairns v. Franklin Mint Co.,

107 F. Supp. 2d 1212, 1214-16 (C.D. Cal. 2000) (citing New Kids on the Block v. News Am. Pub., Inc.,

971 F.2d 302, 309 (9th Cir. 1992)). But the card does no more than state the consecutive kicks record

and name plaintiff as the record holder. There is no language directly or indirectly suggesting that

plaintiff endorsed defendants' products, nor do the plaintiff's name and record appear in a context

that might, by its nature, plausibly mislead consumers to believe that plaintiff endorsed defendants'

products. Cf. Abdul-Jabbar v. Gen Motors Corp., 85 F.3d 407, 412-13 (9th Cir. 1996) (use of athlete's

name in television commercial may have suggested endorsement because "use of celebrity

endorsements in television commercials is so well established by commercial custom that a jury

21.

might find an implied endorsement"). It is especially true that the instruction card did not suggest that plaintiff endorsed defendants' products because, as defendants explain, plaintiff's name and record were used in materials that consumers saw only after they decided to purchase a Wendy's Kids'Meal; the instruction card was not used to promote or advertise footbags or propose any particular transaction related to footbags. At most, it was used to promote Guinness, but plaintiff does not claim to have been harmed by false endorsement of Guinness; he claims to have been harmed by false endorsement of footbags.

Although defendants' use of plaintiff's name was certainly promotional in some sense, this case is more similar to Cairns, or other cases in which a person's name or image is used on a product rather than in advertising for a product, than a typical false-endorsement case. In Cairns, the defendant sold merchandise bearing the image of Princess Diana. 107 F. Supp. 2d at 1213-14. The Court recognized that the essential function of the Lanham Act is to protect consumers from deception as to the source of goods, but merely using Princess Diana's image on an item such as a commemorative plate was no more likely to deceive consumers as to the source of the plate than Andy Warhol's use of a Campbell's soup can or Coca-Cola bottle in his paintings was likely to deceive consumers as to the source of those paintings or as to whether was any association between Warhol and those companies. Id at 1216. Similarly, it is not plausible that the mere use of plaintiff's name and record in the instructions for a game defendants distributed to Wendy's Kids' Meal customers, as an illustrated example of how to play the game and with the intent that the customers would play that game with their families, was likely to confuse anyone as to whether plaintiff endorsed the toys defendants distributed, whether he was in any sense the source of the toys defendants distributed, or whether he was at all associated with them. His false endorsement claim is not sufficient to survive defendants' motion."

This case is not like Cairns. If the Defendants used my image on a plate, I was dead, my domicile was England, and my Estate repeatedly brought suit in California for alleged right of publicity and Lanham

Act violations despite not having a valid claim for either, then yes, this case would be similar to Cairns.

Cairns v. Franklin Mint Co. involved jurisdictional and post-mortem rights issues that are not relevant to

to this case. For the sake of argument, let's put those issues aside and imagine that the Defendants put

my image on a plate and described that image by stating," Footbag World Record Holder Ted Martin".

That act would be analogous to the defendant's actions in Cairns. I would not bring suit for that action.

(765 ILCS 1075/35)

Sec. 35. Applicability

- (a) This Act applies to acts or events that take place after the effective date of this Act.
- (b) This Act does not apply to the following:
  - (1) Use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book, article, or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services;
  - (4) Promotional materials, advertisements, or commercial announcements for a use described under paragraph (1), (2), or (3) of this subsection; or

The IL Right of Publicity Act does not apply to a "work of fine art" or for promotional materials

for a use described under paragraph (1). In the hypothetical case of putting my image on a plate,

that act would be excluded because the plate is a "work of fine art". Describing the image on the

plate as "Footbag World Record Holder Ted Martin" would be excluded because the description

is a promotional material for the plate. To be absolutely clear, the IRPA defines "work of fine art";

(765 ILCS 1075/5)

Sec. 5. Definitions. As used in this Act;

"Work of Fine Art" means (i) a visual rendition including, but not limited to, a painting, drawing,

sculpture, mosaic, videotape, or photograph; (ii) a work of calligraphy; (iii) a work of graphic art

including, but not limited to, an etching, lithograph, serigraph, or offset print; (iv) a craft work in

materials including, but not limited to, clay, textile, fiber, wood, metal, plastic, or glass; or (v) a

work in mixed media including, but not limited to, a collage, assemblage, or work consisting of

any combination of items (i) through (iv).

It is clear that neither my image on a plate nor the description of that image on a plate would

be considered a violation of my right of publicity. As for a false endorsement claim under the

Lanham Act, the United States Court of Appeals, Ninth Circuit in Cairns v. Franklin Mint Co. said,

"The District Court held: Defendants use of the image of Princess Diana on their products and the

words "Diana, Princess of Wales," to describe their products does not imply endorsement by

plaintiffs. Because defendants' use does not implicate the source-identification purpose of

trademark protection, it falls outside the scope of § 1125(a), and defendants are entitled to

summary adjudication of the false endorsement claim as a matter of law.

Cairns III, 107 F. Supp.2d at 1216 (emphasis added). In support of this holding, the District Court quoted

our conclusion in New Kids on the Block v. News Am Publ'g. Inc., 971 F.2d 302, 308 (9th Cir. 1992), that

"nominative (fair) use of a mark ... lies outside the strictures of trademark law ... because it does not

implicate the source-identification function that is the purpose of trademark." The District Court stated:

"Although the New Kids court reached the above conclusion in analyzing defendants' (nominative) fair

use defense, the same threshold consideration is applicable to this case...." Cairns III, 107 F.Supp.2d at

1216. We agree that New Kids' "threshold consideration" applies in the present case and conclude that

Franklin Mint is entitled to a nominative fair use defense for its references to Princess Diana to describe

it's Diana-related products."

It is clear that use of a person's name to describe a "work of fine art" is not a violation of an individual's rights under Sec. 43(a)(1)(A) of the Lanham Act or the IL Right of Publicity Act. In this case, my name was not used to describe a "work of fine art" and therefore Cairns is in no way similar or instructive.

Your Honor, in the previous quote, this Court stated on page #17 of the Memorandum Opinion,

"Although defendants' use of plaintiff's name was certainly promotional in some sense, this case is more similar to Cairns, or other cases in which a person's name or image is used on a product rather than in advertising for a product, than a typical false-endorsement case."

Your Honor, my case is a typical false-endorsement case. Cairns is a nominative fair use case. However, this Court referenced another typical false- endorsement case in that of Abdul Jabar v. General Motors.

Let's compare this case to Abdul Jabar v. General Motors. In a GMC television commercial that aired during the 1993 NCAA men's basketball tournament, a voice said, "Who holds the record for being voted the most outstanding player of this tournament?" On the screen appears the printed words, "Lew Alcindor, UCLA, '67, '68, '69." Next, the voice asked, "Has any car made the 'Consumer Digests Best Buy list more than once? (and responds:) The Oldsmobile Eighty-Eight has." The commercial then goes on to talk about the car without mention of the plaintiff again.

Abdul-Jabbar contended that GMC's unauthorized use of his birth name, Lew Alcindor, was likely to confuse consumers as to his endorsement of the Olds 88, and thus violates the Lanham Act. GMC offered two defenses in response to the claim: 1) Abdul-Jabbar lost his rights to the name Lew Alcindor when he "abandoned" it; and 2) GMC's use of the name Lew Alcindor was a nominative fair use which is not subject to the protection of the Lanham Act. The district court held both defenses applicable.

25

Abdul-Jabbar appealed to the United States Court of Appeals, Ninth Circuit, the Court had this to say,

"(11) The distinction between this case and New Kids is that use of celebrity endorsements in television commercial is so well established by commercial custom that a jury might find an implied endorsement in General Motors' use of the celebrity's name in a commercial, which would not inhere in a newspaper poll. Newspapers and magazines commonly use celebrities' names and photographs without making endorsement contracts, so the public does not infer an endorsement agreement from the use. Many people may assume that when a celebrity's name is used in a television commercial, the celebrity endorses the product advertised. Likelihood of confusion as to endorsement is therefore a question for the jury. White v. Samsung Elec. Am., Inc., 971 F.2d 1395, 1400-01 (9th Cir. 1992) (holding that use of a robot dressed and posed like Vanna White next to a "Wheel of Fortune" set raised sufficient question of fact as to endorsement under the Lanham Act to preclude summary judgment), cert. denied, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993).

By using Alcindor's record to make a claim for its car—like the basketball star, the Olds 88 won an "award" three years in a row, and like the star, the car is a "champ" and a "first round pick"—GMC has arguably attempted to "appropriate the cachet of one product for a different one," if not also to "capitalize on consumer confusion." New Kids at 308. We therefore hold that there is a question of fact as to whether GMC is entitled to a fair use defense.

c) Abdul-Jabbar's Lanham Act claim

(12) In considering celebrities' claims of violation under the Lanham Act, we have considered the following factors to determine whether a plaintiff has raised a genuine issue of material fact as to likelihood of confusion over endorsement: "(1) strength of the plaintiffs mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels

used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark." White, 971 F.2d at 1400.

*1398 The parties dispute the applicability of the factors. GMC concedes that the fifth factor, marketing channels, favors Abdul-Jabbar, but contests the rest. Because a jury could reasonably conclude that most of the factors weigh in plaintiff's favor, we hold that the question of whether Abdul-Jabbar's Lanham Act claim should succeed is a question for the jury."

The United States Court of Appeals, Ninth Circuit rejected the nominative fair use defense when an individual's name and record were used in a commercial advertisement for a product. The Court should take note of the particular product in all of these cases. In Cairns, the product was an artistic rendering of an individual. In Abdul Jabar, the product was a car. In this case, the product is a Wendy's Kids' Meal. Let's compare this case to Abdul Jabar using the Sleekcraft factors:

(1) Strength of the plaintiff's mark; Both are strong. This factor favors both plaintiffs.
(2) Relatedness of the goods; The defendant in Abdul Jabar compared his record to the car's record. In this case, the Defendants included a footbag in the Wendy's Kids' Meal and then used my name and record in connection with the footbag. This factor favors both plaintiffs.
(3) Similarity of marks; Both plaintiffs identified by name and record. This factor favors both plaintiffs.
(4) Evidence of actual confusion; Unclear whether Abdul Jabar has evidence of actual confusion. In this case, I can produce evidence of actual confusion. This factor favors Martin.
(5) Marketing channels used; Abdul Jabar's name and record were used in six television commercials. The Defendants in this case distributed the advertisement themselves increasing the likelihood of confusion as to affiliation. This factor favors both plaintiffs.
(6) Likely degree of purchaser care; Consumers are not likely to be particularly careful in determining who endorses a product. In this case, the targeted consumers are children increasing the likelihood of confusion. This factor favors both plaintiffs.
(7) Defendants intent in selecting the mark; In Abdul Jabar, the defendant directly compared his record with their car's record. In this case, the Defendants directly associated my record with the Defendants' promotional footbag. This factor favors both plaintiffs.

## VII.    FALSE ADVERTISING

The United States Supreme Court stated on page #19 of the Lexmark Opinion of the Court,

"When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's

injury flows directly from the audience's belief in the disparaging statements. Courts have therefore

afforded relief under § 1125(a) not only where a defendant denigrates a plaintiff's product by name,

see, e.g., McNeilab, Inc. v. American Home Prods. Corp., 848 F.2d 34, 38 (CA2 1988), but also where

the defendant damages the product's reputation by, for example, equating it with an inferior product,

see, e.g., Camel Hair and Cashmere Inst. Of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6,7-8,

11-12 (CA1  1986); PPX Enterprises, Inc. v. Audiofidelity, Inc., 746 F. 2d 120, 122, 125 (CA2  1984).


 The card with the following quote was literally sealed in the bag with the Defendants' footbag.

"How many times in a row can you kick this footbag without it hitting the ground? Back in 1997,

Ted Martin made his world record of 63,326 kicks in a little less than nine hours! Practice makes

perfect, so first try flicking the footbag from one foot to the other or to your knee."


In addition to the direct physical connection, the Defendants used words to connect their footbag

to Ted Martin and his record of 63,326 kicks. The Defendants say "this footbag" and without missing

a beat, name the record holder for the game of footbag and cite the actual number of kicks of the

record. The Defendants imply that "this footbag" is the same as the footbag that was used to achieve

the Footbag World Record and that the Footbag World Record Holder is endorsing the Defendants'

footbag. Every consumer would think that Footbag World Record Holder Ted Martin was endorsing

the Defendants' footbag. Every consumer would think that the Footbag World Record was achieved

with a footbag like the Defendants' footbag. As a matter of law, it is not incumbent upon the consumer

to determine that the advertiser is being deceptive and disregard the advertisement.

28

The card alone provides enough evidence to find the Defendants liable under the IL Right of Publicity Act and both Sec. 43(a)(1)(A) and Sec. 43(a)(1)(B) of the Lanham Act.

Your Honor, the objective of the game of footbag is to see how many times in a row you can kick the footbag without a miss. This is common knowledge even among children. My record is known as the Footbag World Record because I have the record that is incorporated into the game itself. No record, other than mine, has ever been referred to as the Footbag World Record. If any interested party Googles, "the footbag world record" they get "Record Holder: Ted Martin / Des Plaines, Illinois, USA".

In White v. Samsung, the defendant was held liable under common law right of publicity and Sec. 43(a) of the Lanham Act for evoking White's "persona" with its robot ad. In this case, the Defendants evoked my "persona" every time "record" was mentioned in connection with the footbag. The Defendants even printed "Guinness World Records" on the footbag itself. The theme of the promotion was world records. I am the Footbag World Record Holder. Footbag plus World Record equals Footbag World Record. Every consumer, especially children, would make this association without any thought what-so-ever.

The Defendants say on the Kids' Meal bag, "BREAK A RECORD WITH THESE RECORD-BREAKING TOYS!" The other side of the bag says, "1 of 6 record-breaking toys inside!" One of the toys is a footbag. The Defendants are describing their footbag as "record-breaking". The Defendants claim that the term, "record-breaking" is puffery. The Defendants are wrong. On page # 13 of the Memorandum Opinion and Order, this Court states, "Defendants contend that the term "record-breaking," as used in the promotional materials, is puffery because it is essentially just a way to say "best" or "greatest"— in other words, essentially nothing." Your Honor, "record-breaking" is way too specific of a term to be considered puffery. If the Defendants can't cite a record, any record, in connection with the use of the term "record-breaking" then the term, in and of itself, is misleading.

29

However, Sec. 43(a)(1) of the Lanham Act says, "uses in commerce any word, term, name, symbol, or device, or any combination thereof,". The Court should look at the entire promotion to determine if the Defendants engaged in false advertising. The Defendants described the Defendants' footbag as "record- breaking". "Guinness World Records" was printed on the footbag itself. Thus, the Defendants described the Defendants' footbag as a Guinness World Records record-breaking footbag. Therefore, the record the Defendants are referring to is inferred to be a Guinness World Record. In a commercial advertisement this could be described as a "teaser". When it comes to Footbag, the public really only knows about one record, the Footbag World Record. The consumer is likely already thinking that the Guinness World Records record-breaking footbag is associated with the Footbag World Record.

The consumer then opens the sealed bag to get the footbag. The card with the footbag says, "How many times in a row can you kick this footbag without it hitting the ground? Back in 1997, Ted Martin made his world record of 63,326 kicks in a little less than nine hours!"

In the consumer's view, the term "record-breaking" is not misleading. The Defendants clearly stated that their Guinness World Records record-breaking footbag was used to achieve Ted Martin's world record of 63,326 kicks in a row without it hitting the ground. This is a typical false advertising case. My actual Guinness World Records record-breaking footbag was equated with the Defendants' inferior footbag. The Court should note that tens of millions of footbags have been sold since I became the record holder in 1988. I have seen at least four footbags used for promotional purposes where the business or logo was placed directly on the footbag. My name, record, and persona was not used in any of these circumstances. The Defendants have no legitimate reason to be using my name, record, and persona in their promotion. The Defendants should be held liable for violating my rights under Sec. 43(a)(1)(B) of the Lanham Act.

## VIII.    CONCLUSION AND RELIEF REQUESTED

On page #3 of the Memorandum Opinion and Order, this Court stated, "Defendants move

to dismiss the complaint because (1) plaintiff's IRPA claim is time-barred, (2) plaintiff has

no standing under the Lanham Act, (3) the term "record-breaking," as used in defendants'

promotional materials, is mere puffery, (4) plaintiff has not stated a plausible claim of false

endorsement based on defendants use of his name or any references to his records, and

(5) the First Amendment is a complete defense to plaintiff's claims."


All of the Defendants arguments have been rejected by an Appeals Court or the Supreme Court.


(1) The United States Court of Appeals, Seventh Circuit explicitly rejected the Defendants'
statute of limitations argument in Berry v. Ford Modeling Agency Inc. (No. 12-3776)
(2) The United States Supreme Court stated unequivocally that I have standing when claiming
a reputational injury in Lexmark v. Static Control Components, Inc.
(3) The United States Supreme Court stated unequivocally that I can be afforded relief when
a "defendant damages the product's reputation by, for example, equating it with an inferior
product" in Lexmark v. Static control Components, Inc.
(4) In citing Cairns v. Franklin Mint Co. and presenting Cairns as a typical false endorsement case,
the Defendants were deceptively claiming a nominative fair use defense. The Defendants in
Abdul Jabar v. General Motors, 75 F. 3d 1391 (1996) claimed a nominative fair use defense in
connection with their use of the plaintiff's name and record in their commercial advertisement.
The United States Court of Appeals, Ninth Circuit rejected the defendant's argument.
(5) The United States Court of Appeals, Seventh Circuit explicitly rejected the defendant's
First Amendment defense in Jordan v. Jewel Food Stores, Inc. 743 F .3d 509 (2014).


The Defendants' claims, defenses, and other legal contentions are without merit. The Defendants'

entire defense is based on false representations of the legal standards and the applicability of the laws

that I brought suit under. The Defendants' outrageously misrepresented Lexmark v. Static Control Inc.

The Defendants misrepresentations of Lexmark were used not only to undermine my case but to undermine any other case that this Court might review. On page #5 of the Motion to Dismiss, the Defendants undermined the United States Court of Appeals, Seventh Circuit with this statement,

"As the Seventh Circuit explains, one basis of liability under the Lanham Act includes "false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device." L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561, 575 (7th Cir. 1993) abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377, 1380 (2014) on other grounds."

The Defendants then went on to present Cairns v. Franklin Mint Co. as a typical false endorsement case. The Court relied on the Defendants' misrepresentations in issuing the Memorandum Opinion and Order. The Defendants' improper conduct was willful, part of a pattern of activity, and infected the entire pleading. This plaintiff was forced to expend a considerable amount of time and effort to detect and refute the Defendants' specious arguments. The Defendants' improper conduct can be sanctioned under FRCP Rule 11(b). However, I leave that matter to the Court's to discretion.

This Court is already aware of the lengths I went to in trying to settle this case with both Defendants. The Defendants chose to misrepresent the legal standards and applicability of the law to this plaintiff before I brought suit and to this Court after I brought suit. There are no facts in this case which can be reasonably disputed. The Defendants have not offered a legitimate defense. I thank the Court for the opportunity to give this response and move for Summary Judgment.

32

I seek in relief,

    (a) Deny the Defendants' Joint Motion to Dismiss Amended Complaint.

    (b) Grant this Plaintiff Discovery.

    (c) Grant this Plaintiff Summary Judgment.

    (d) Any other relief that this Court may deem just and proper.

July 5, 2016

                                      Respectfully submitted,

                                       _Ted Martin_

                                       Ted Martin

                                       359 Woodbridge

                                       Des Plaines, IL 60016

                                       Phone: (847) 824-6528

                                       Fax: (847) 824-6533

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on July 5, 2016, I provided service to the Defendants by causing a true and correct copy of this RESPONSE TO MOTION TO DISMISS AMENDED COMPLIANT AND MOTION FOR SUMMARY JUDGEMENT to be served by US mail to:

Marshall, Gerstein & Borun LLP
Julianne M. Hartzell
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357

By: _Ted Martin_____

Ted Martin