**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHANNES T. MARTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 15 C 6998** |
| **v.** | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **WENDY'S INTERNATIONAL, INC., and** | ) | |
| **GUINNESS WORLD RECORDS** | ) | |
| **LIMITED,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Johannes "Ted" Martin claims that defendants Wendy's International, Inc. ("Wendy's") and Guinness World Records Limited ("Guinness") violated Section 43(a) of the Lanham Act and his right of publicity under Illinois law by using his identity in a 2013 promotion. Defendants have jointly moved to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted.

## BACKGROUND

In an earlier order in this case, the Court related the facts underlying this dispute as follows:

> [P]laintiff holds the world record for consecutive kicks of a footbag. A footbag is a popular toy also known by a common brand name, Hacky Sack. In June of 1997, plaintiff set the world record by kicking a footbag into the air 63,326 consecutive times without letting it hit the ground. (Compl. at 1-2.)
>
> Over a six-week period in August and September 2013, Wendy's and Guinness ran a promotion in which every Kid's Meal sold at Wendy's restaurants included one of six Guinness-themed toys. (*Id.* at 3-4, Ex. A.) According to an announcement posted on the Guinness website, which plaintiff printed and attached to his complaint, Guinness "teamed up with Wendy's" to add a little friendly record-breaking competition to family dining" by offering "record-breaking toys," including a trick footbag ("Once the neighborhood gets a hold of

the skills on this footbag, it's only a matter of time before the record of 946 people playing in a circle at once gets taken down.") (*Id.*, Ex. A.) The announcement stated that "each toy provides fun challenges and a chance for parents and kids to outdo each other for the title of family's best. Tallest, smallest, fastest, farthest—each Kid's Meal will allow parents and kids to keep the fun going!" (*Id.*) Further, it stated that each Wendy's Kid's Meal would come with a link to a downloadable eBook, which provided "an exclusive guide to records that families can try to break, so mom or dad or brother or sister can set the family record. It's also packed with many fantastic records that can be broken in just a minute . . . ." (*Id.*)

The words "Guinness World Records" were written on the footbag toys and on their packaging. (*Id.*, Exs. B, D.) Other printed materials related to the promotion, including an in-store display and the bag in which the Kid's Meals were sold, bore the Guinness World Records logo just beneath the heading, "Kids vs. Parents." (*Id.*, Exs. B-D.) The text on both sides of the Kid's Meal bag referred to the promotion's six "record-breaking toys." (*Id.*, Ex. C.) An instructional card included with the trick footbag toy showed a picture of two people playing footbag (plaintiff concedes that he is not pictured) and listed three records below the picture:

    1. The most kicks of a footbag in five minutes is 1,019.
    2. The most people playing footbag in a circle at one time is 946.
    3. The most consecutive footbag kicks in 10 minutes by a pair is 1,415.

(*Id.*, Ex. E.) Directly under the heading, "Instructions," the card read as follows: "How many times in a row can you kick this footbag without it hitting the ground? Back in 1997, Ted Martin made his world record of 63,326 kicks in a little less than nine hours!" (*Id.*) The card then went on to provide instructions on how to use the footbag. (*Id.*) It concludes with the question, "What kind of family record can you set?" (*Id.*)

(Mem. Op. & Order, at 1-3, May 2, 2016, ECF No. 26, *available at Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 927-28 (N.D. Ill. 2016) (the "May 2, 2016 Order")). According to plaintiff, defendants violated his rights under the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by printing "Guinness World Records" on each footbag, using the term "record-breaking toys" in promotional materials, and referring to plaintiff by name in conjunction with his consecutive-footbag-kicks world record on the instruction card included with each footbag.

Defendants moved to dismiss for failure to state a claim. In its May 2, 2016 Order, the Court granted defendants' motion and gave plaintiff leave to amend within 21 days. Plaintiff has filed an amended complaint based on essentially the same factual allegations. Defendants again move to dismiss.

## ANALYSIS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).[1]

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action,

---

[1] Some courts hold that a plaintiff bringing claims under Section 43(a) of the Lanham Act must also comply with Rule 9(b), which requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Because plaintiff's claims are based on specifically identified statements, it is clear that plaintiff meets the 9(b) standard.

supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Initially, the Court notes that plaintiff's amended complaint is improper because, rather than clearly and completely reciting the factual allegations underlying plaintiff's claims against defendants, it primarily focuses on arguing that the Court should reverse its earlier decision. But when this Court gave plaintiff leave to file an amended complaint, it was not inviting him to file a motion to reconsider its dismissal of his original complaint. An amended complaint must stand on its own by incorporating all of the plaintiff's factual allegations and any exhibits supporting them, without reference to prior pleadings, because "an amended complaint supersedes an original complaint and renders the original complaint void." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Plaintiff omits critical facts from the amended complaint, apparently under the mistaken belief that he need not re-allege them. Nevertheless, plaintiff is entitled to leeway as a *pro se* plaintiff, so for purposes of defendants' motion to dismiss, the Court will treat his filing as if it contains all the allegations and exhibits of the original complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (internal quotation marks omitted); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

In their motion to dismiss the amended complaint, defendants argue that despite the opportunity to amend, plaintiff fails to allege any additional facts, and therefore the claims in the amended complaint fail for the same reasons the claims failed in the original complaint. Additionally, defendants argue, as they argued in their original motion to dismiss, that the First Amendment provides a complete defense to all of plaintiff's claims.

## I.        IRPA

The Illinois Right of Publicity Act grants to each individual the "right to control and to choose whether and how to use [his or her] identity for commercial purposes," 765 ILCS 1075/10, by prohibiting the "use [of] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent," 765 ILCS 1075/30.

In its May 2, 2016 Order, this Court held that plaintiff's IRPA claim is time-barred because the one-year statute of limitations applicable to "[a]ctions for slander, libel or for publication of matter violating the right of privacy," 735 ILCS 5/13-201, also applies to IRPA claims such as plaintiff's, and plaintiff did not plausibly allege that defendants fraudulently concealed his claim from him. The Court did not reach the substantive issue of whether plaintiff stated a claim for a violation of IRPA. None of the factual allegations or assertions in plaintiff's amended complaint or response brief changes the Court's analysis of the statute of limitations; plaintiff has simply argued that this Court should reverse itself, without providing any new facts on which the Court might base a different conclusion.

However, since this Court issued its May 2, 2016 Order, the Seventh Circuit has taken pains to point out (albeit in an unpublished opinion) that it considers it an open question whether IRPA claims are subject to the one-year statute of limitations set forth in 735 ILCS 5/13-201 or to the five-year statute of limitations applicable to claims for "an injury done to property" and "all civil actions not otherwise provided for," 735 ILCS 5/13-205. *See Martin v. Living Essentials, LLC*, 653 F. App'x 482, 485-86 (7th Cir. 2016). Neither the Seventh Circuit nor the Illinois Supreme Court has directly addressed the issue. *Id.* The Seventh Circuit has twice sidestepped it, in each case explaining that it need not address the issue because, even assuming

that the plaintiff had timely filed his complaint, he was unable to state a claim under IRPA. *See id.*, *Berry v. Ford Models, Inc.*, 525 F. App'x 451, 454 (7th Cir. 2013).

In view of the note of caution that the Seventh Circuit sounded in *Martin v. Living Essentials, LLC*, the Court pauses to reconsider the issue. This Court based its prior decision in large part on *Blair v. Nevada Landing Partnership*, 859 N.E.2d 1188, 1195-96 (Ill. App. Ct. 2006), the only published decision by an Illinois state court to address the matter of the applicable statute of limitations under IRPA. In *Blair*, the Illinois Appellate Court concluded that the one-year statute of limitations applies to IRPA claims because, when IRPA became effective on January 1, 1999, it "completely supplanted the common-law tort of appropriation of likeness," one of the four invasion of privacy torts recognized by Illinois law. *See id.* at 1192; *see also Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 928-29 (Ill. App. Ct. 2013) (tracing the history of the appropriation of likeness tort and IRPA). The one-year statute of limitations provided by 735 ILCS 5/13-201 applies to "[a]ctions for . . . publication of matter violating the right of privacy," which included actions for appropriation of likeness under the common law, as well as actions for the other common law invasion of privacy torts involving wrongful publication. *See Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1007 (Ill. App. Ct. 1999) (735 ILCS 5/13-201 applied to actions for (1) public disclosure of private facts, (2) *appropriation of likeness*, and (3) false-light publicity).

In analyzing whether the same statute provides the applicable statute of limitations to IRPA claims, the appellate court in *Blair* cited the language of IRPA, which explains that "[t]he rights and remedies provided for in this Act are meant to supplant those available under the common law," particularly with respect to "the common law right of publicity," 765 ILCS 1075/60, the right that was the basis for the tort of appropriation of likeness. *See Blair*, 859

6

N.E.2d at 1191-92 ("The tort of appropriation of one's likeness is sometimes referred to as 'the right of publicity.'") The court recognized that the statutory tort is composed of the same three elements as the common law tort it replaced. *Id.* Further, IRPA provides that "[e]xcept for the common law right of publicity, the rights and remedies provided under [IRPA] are *supplemental* to any other rights and remedies provided by law including, but not limited to, the common law right of privacy." *Id.* (citing 765 ILCS 1075/60) (emphasis added). Based on this textual evidence that IRPA's aim was to codify the common law right of publicity tort (or appropriation of likeness tort) and generally to "supplement" the common law rather than substantially alter it, the court concluded that the same statute of limitations should apply to the right of publicity tort both before and after its codification.

The Court is as persuaded by this reasoning as it was in its original ruling, and it sees no reason to deviate from that ruling now. Nevertheless, as a precaution, the Court will go on to consider whether, assuming that plaintiff's claim is timely, plaintiff states a claim under IRPA. Defendants argue that (1) plaintiff fails to state a claim because his identity was not used for a "commercial purpose," as the statute requires, and (2) even if it was, defendants' use of plaintiff's identity falls within the range of conduct excluded from IRPA under 735 ILCS 1075/35(b).

Defendants' first argument is easily rejected. "Commercial purpose" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5; *see Trannel*, 987 N.E.2d at 929-30 (defining "public use" as use directed to the "community at large," and "holding out" as "representing"). It is clear that defendants

7

publicly used or held out plaintiff's identity for a promotional purpose by using his name in their promotion, which meets the second prong of the "commercial purpose" definition.

Defendants also argue that at least one of the IRPA exemptions is applicable in this case. IRPA explicitly does not apply to the following:

> (1) use of an individual's identity in an attempt to portray, describe, or impersonate that individual in [an artistic work];
> (2) use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign;
> (3) *use of an individual's name in truthfully identifying the person as the author of a particular work or program or the performer in a particular performance*;
> (4) promotional materials, advertisements, or commercial announcements for a use described under paragraph (1), (2), or (3) of this subsection; or
> (5) use of photographs, videotapes, and images [as] specimens of [a] professional photographer's work . . . .

765 ILCS 1075/35(b) (emphasis added).  Defendants argue that the third exemption applies here because defendants merely identified plaintiff as the person who once kicked a footbag 63,326 consecutive times; therefore, they "truthfully identif[ied]" plaintiff as "the author of a particular work or program or the performer in a particular performance."  The Court agrees with defendants that their reference to plaintiff falls within this exemption.  *See Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 825-26 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017) (applying 765 ILCS 1075/35(b)(3) where plaintiff claimed that online bookseller violated his right of publicity merely by listing his books for sale without his permission); *cf. Trudeau v. Lanoue*, No. 04 C 7165, 2006 WL 516579, at *1, 6 (N.D. Ill. Mar. 2, 2006) (finding 765 ILCS 1075/35(b)(3) inapplicable because defendants used a picture of plaintiff, in addition to his name, to "artfully" deploy his identity to "give the false impression . . . that the consumer was in effect buying Defendants' products from [plaintiff]").  Defendants did nothing but truthfully identify plaintiff as the holder of one of the world records reported by Guinness, as an example of one of the records it reports.  Plaintiff does not challenge Guinness's right to list his record in its book, and

8

it would be nonsensical to hold that the law prohibits Guinness from reciting that bare fact in a promotional item but permits it to include the fact in the books it sells. Plaintiff fails to state a claim for violation of his right of publicity under IRPA.

## II.     LANHAM ACT SECTION 43(a)

Section 43(a) provides as follows:

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Thus, there are two bases for liability: false association or endorsement, under subsection (A); and false representations in advertising, under subsection (B). *Tecnomatic, S.p.A. v. Remy, Inc.*, No. 1:11-CV-00991-SEB, 2012 WL 2376066, at *15 (S.D. Ind. June 22, 2012) (citing *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)).

Plaintiff's amended complaint and response brief include virtually no additional facts that might be relevant to his Lanham Act claims, so for the most part, there is no reason for the Court to revisit its earlier analysis of these issues. The only new fact that is arguably material to plaintiff's claims is his assertion that he has business associates in Montreal, Canada, who told him, "We thought you had something to do with it," *i.e.*, they believed that plaintiff was directly

9

involved in defendants' footbag promotion. Plaintiff argues that this fact supports his false endorsement claim.

But to state a claim for false endorsement under the Lanham Act, plaintiff must show that the terms defendants used and the representations they made in the 2013 promotion likely caused consumers to believe that plaintiff endorsed defendants' products. *See* 15 U.S.C. § 1125(a)(1)(A); *Woodard v. Victory Records, Inc.*, No. 11 C 7594, 2016 WL 1270423, at *9 (N.D. Ill. Mar. 31, 2016) (citing *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 522 (7th Cir. 2014)); *see also Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1020 (3d Cir. 2008), *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007-08 (9th Cir. 2001)). The inquiry must focus on confusion by the customer. *See Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 455 (7th Cir. 2011).

Regardless of plaintiff's anecdotal account of what his business associates in Montreal might think, the Court remains unconvinced that plaintiff has plausibly alleged that ordinary consumers are likely to believe, based only on the fact that defendants mentioned plaintiff's record in the course of their promotional distribution of free footbags, that plaintiff endorsed the footbags. It is clear in the context of the promotion that mentioning plaintiff's record on the instructional card served only to offer a sample of the sort of world records Guinness publishes—and plaintiff does not claim that Guinness does not have the right to publish the record in its books. Plaintiff insists that merely by mentioning him in their promotion, defendants implied that he endorsed the free footbags they were distributing, but the promotion makes no explicit or implicit connection between plaintiff and those particular footbags. Indeed, it makes no meaningful representations at all about the quality of the footbags; the promotion merely represents that footbags can be used to set records.

Plaintiff vigorously argues that this case is identical to *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 412-13 (9th Cir. 1996), but as this Court suggested in its earlier ruling, *Abdul-Jabbar* is critically distinguishable.  In that case, defendant General Motors Corporation ("GMC") used plaintiff Kareem Abdul-Jabbar's birth name "Lew Alcindor" in a car commercial:

> This dispute concerns a GMC television commercial aired during the 1993 NCAA men's basketball tournament. The record includes a videotape of the spot, which plays as follows: A disembodied voice asks, "How 'bout some trivia?" This question is followed by the appearance of a screen bearing the printed words, "You're Talking to the Champ." The voice then asks, "Who holds the record for being voted the most outstanding player of this tournament?" In the screen appear the printed words, "Lew Alcindor, UCLA, '67, '68, '69." Next, the voice asks, "Has any car made the 'Consumer Digest's Best Buy' list more than once? [and responds:] The Oldsmobile Eighty–Eight has." A seven-second film clip of the automobile, with its price, follows. During the clip, the voice says, "In fact, it's made that list three years in a row. And now you can get this Eighty–Eight special edition for just $18,995." At the end of the clip, a message appears in print on the screen: "A Definite First Round Pick," accompanied by the voice saying, "it's your money." A final printed message appears: "Demand Better, 88 by Oldsmobile."

*Id.* at 409.  GMC argued that plaintiff's Lanham Act claim could not be premised on the mere mention of the bare fact that he held the record for most times voted most outstanding player of the NCAA tournament.  The Ninth Circuit disagreed:

> [U]se of celebrity endorsements in television commercials is so well established by commercial custom that a jury might find an implied endorsement in [GMC's] use of the celebrity's name in a commercial . . . .  Many people may assume that when a celebrity's name is used in a television commercial, the celebrity endorses the product advertised. . . .
>
> Had GMC limited itself to the "trivia" portion of its ad, GMC could likely defend the reference to Lew Alcindor as a nominative fair use. *But by using Alcindor's record to make a claim for its car*—like the basketball star, the Olds 88 won an "award" three years in a row, and like the star, the car is a "champ" and a "first round pick"—GMC has arguably attempted to "appropriate the cachet of one product for another," if not also to "capitalize on consumer confusion."

*Id.* at 413 (emphasis added) (quoting *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)).  This case is plainly different.  First, unlike a television commercial,

an instruction card included with a free promotional toy is not a context in which consumers are accustomed to seeing celebrity endorsements. Second, and more importantly, defendants did not use plaintiff's record to "make a claim for" its footbags. As the Court explained in its initial ruling, mentioning the record served at most as "an illustrative example" (May 2, 2016 Order, at 18) of what to do with a footbag; it had nothing to do with the qualities of the footbag. The Court still fails to see how this suggests endorsement of the footbags or indeed "implicate[s] the source-identification purpose of trademark protection" at all. *See Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1216 (C.D. Cal. 2000). The Court adheres to its prior conclusion that plaintiff does not state a claim for false endorsement under the Lanham Act.[2]

Because plaintiff fails to state a claim, his complaint will be dismissed. The Court previously gave plaintiff a chance to replead because it was unclear whether he might be able to make additional factual allegations about defendants' footbag promotion. But plaintiff fails to state a claim in the amended complaint, and he has not meaningfully added to the factual allegations he had already made. Because repleading again will not alter the promotional materials on which plaintiff attempts to base his claims and there are apparently no other

---

[2] As they did in their initial motion to dismiss, defendants contend that the First Amendment provides a complete defense to plaintiff's claims. The Court need not address this contention because, as the foregoing discussion demonstrates, plaintiff fails to state a claim under IRPA or the Lanham Act, and the Court should "avoid unnecessary constitutional adjudication." *See Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 871 (7th Cir. 2013). Parenthetically, however, the Court notes that defendants' First Amendment argument is suspect. The Seventh Circuit held in *Jordan*, 743 F.3d at 520, that even "image advertising" that does not directly promote a particular product is commercial speech not entitled to full First Amendment protection, and it is unclear whether there is any meaningful distinction between the advertising in that case and defendants' promotional activity in this case. Further, the case on which defendants principally rely, *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013), concerns the *Rogers v. Grimaldi*, 875 U.S. 994, 999 (1989), test for whether a challenged use of a trademark plaintiff's identity that occurs in the context of an expressive work is entitled to First Amendment protection. But it is not clear that the promotion plaintiff challenges in this case should be characterized as an "expressive work." *See Facenda*, 542 F.3d at 1015-18 (concluding that promotional film analogous to an infomercial was not an expressive work entitled to more robust First Amendment protection).

material facts that might cast the promotion in a different light, the dismissal will be with prejudice.

## CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to dismiss [28] with prejudice. Civil case terminated.

**SO ORDERED.**                                      **ENTERED:** April 28, 2017

**_____**
**HON. JORGE L. ALONSO**
**United States District Judge**

13